# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES G. GRAY, CAPT., MC, USN (RET.), | Civil No. 05cv1893 J (BLM) |
| Plaintiff, | **ORDER:** |
| v. | **1) DENYING PLAINTIFF'S MOTIONS IN LIMINE [Doc. No. 24]; and** |
| UNITED STATES OF AMERICA, | **2) DENYING DEFENDANT'S MOTIONS IN LIMINE [Doc. No. 25]** |
| Defendant. | |

Plaintiff has filed a Motion in Limine to limit the testimony and evidence of Defendant's expert economist, Laura Fuchs Dolan. [Doc. No. 24]. Defendant has opposed this Motion. [Doc. No. 29.] In addition, Defendant has filed a Motion in Limine to exclude the testimony of Plaintiff's vocational rehabilitation expert, Carol Hyland, and the testimony of Plaintiff's expert economist, Robert Johnson. [Doc. No. 25.] Plaintiff has opposed this Motion. [Doc. No. 30.] A Motion in Limine Hearing was held on Monday, February 26, 2007, at 9:00 a.m.

//
//
//
//

*Background*

Plaintiff Charles G. Gray brings this action against Defendant United States of America under the Federal Tort Claims Act arising out of sinus surgery on March 31, 2003.  (*See* Prop. Pretrial Order at 1.)  Plaintiff alleges that surgery was performed on his right eye without the required informed consent, the procedure was performed in a negligent manner, the procedure was performed without an adequate trial of other less invasive methods, and that the post operative care was below the standard of care.  (*See id.*)  As a result of these alleged deviations from the standard of care and the alleged negligence of the providers, Plaintiff alleges that he suffered complications resulting in both economic and non-economic damages.  (*See id*. at 2.)

*Discussion*

I.   **Plaintiff's Motions in Limine**

   A.   *Ms. Dolan's Initial Rebuttal Report*

Plaintiff has filed a Motion in Limine to limit the opinion testimony of Defendant's expert economist, Laura Fuchs Dolan, on the ground that Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure "limits opinion testimony of rebuttal experts to evidence intended to solely contradict or rebut evidence on the same subject matter identified by another party."  (*See* Pl.'s Mot. in Limine at 1-2.)  On July 21, 2006, Magistrate Judge Major issued an order requiring the Parties to exchange expert disclosures on August 28, 2006, and exchange rebuttal disclosures on September 11, 2006.  [Doc. No. 10.]  On September 11, 2006, Defendant submitted a rebuttal report by Ms. Dolan.

Plaintiff, however, argues that Ms. Dolan's report is not a rebuttal report because she "based her opinions not on any information from Plaintiff's expert economist, but on the fact that Dr. Gray had not been employed for 3 years following his retirement, that he was receiving a U.S. Navy pension, and [on] the opinions of Defendant's vocational rehabilitation expert."  (*See* Pl.'s Mot. in Limine at 4.)  Defendant argues that Ms. Dolan's report does rebut Plaintiff's expert economist's, Robert Johnson, report, as shown by the different methodology and assumptions used in her report and by the differences in the final numbers arrived at by the experts.  (*See* Def.'s Opp'n to Pl.'s Mot. in Limine at 2.)

Federal Rule of Civil Procedure 26(a)(2)(C) provides that "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under paragraph (2)(B), [such evidence shall be disclosed] within 30 days after the disclosure made by the other party." Fed. R. Civ. P. 26(a)(2)(C). Accordingly, if Ms. Dolan's report contradicts or rebuts evidence on the same subject matter as that of Dr. Johnson's report, it will meet the requirements of Rule 26(a)(2)(C). In her initial rebuttal report, Ms. Dolan indicates that she has reviewed the materials and information listed in Exhibit C of her report, which includes Plaintiff's expert economist's, Robert Johnson, report. (*See* Pl.'s Mot. in Limine, Ex. B at 2.) Additionally, the subject matter of Ms. Dolan's report is the total economic loss sustained by Dr. Gray. (*See generally id.*)

Pursuant to the Court's instructions at the February 26, 2007, Hearing, Plaintiff has filed a copy of both Dr. Johnson's initial and supplement reports. (*See id.*, Ex. D.) The subject matter of Dr. Johnson's initial report is the present value of Dr. Gray's economic damages based on his lost earning capacity. (*See id.*) Although Plaintiff correctly notes that Ms. Dolan does not specifically express an opinion as to or cite to Dr. Johnson's report in her initial rebuttal report, the subject matter of her report does contradict that of Dr. Johnson, and thus, is appropriate for rebuttal evidence. Accordingly, finding that the subject matter of Ms. Dolan's report contradicts and rebuts that of Dr. Johnson's report, the Court **DENIES** Plaintiff's Motion to limit Ms. Dolan's initial rebuttal report.

**B.**     *Ms. Dolan's Supplemental Rebuttal Report*

Plaintiff further argues that Ms. Dolan's supplemental report filed on October 20, 2006, should also be limited because the report "contains opinions regarding Plaintiff's expert that should have been in her original expert rebuttal disclosure."[1] (*See* Pl.'s Mot. in Limine at 4.)

---

[1] Plaintiff incorrectly cites to two cases for the proposition that new opinions are not allowed as a supplemental disclosure. (*See* Pl.'s Mot. in Limine at 4.) However, *Metro Ford Truck Sales, Inc. v. Ford Motor, Co.*, 145 F.3d 320 (5th Cir. 1998) involved the late designation of an expert and the three-month, late filing of the expert's report. The Court held that supplemental "disclosures are not intended to provide an extension of the expert designation and report production deadline," and that "the district court did not abuse its discretion in refusing to modify the scheduling order and in enforcing the time deadlines." *Id.* at 324. In *Kenner v. United States*, 181 F.R.D. 639, 642 (D. MT. 1998), the court used its discretion to limit the expert testimony to the initial disclosure based on a finding that the "nature of

Defendant counters that Ms. Dolan's supplemental report was necessary pursuant to Rules 26(a)(2) and 37(c)(1), which require the disclosure of additional material information. (*See* Def.'s Opp'n to Pl.'s Mot. in Limine at 3.) Defendant argues that the late disclosure "was justified by the fact that Johnson's [deposition] transcript was not received until October 2, 2006, . . . his supplemental report was not received until October 10, 2006[,] and the supplement report was submitted "well within the 30 days prescribed by Rule 26(a)(2)(C) for rebuttal evidence." (*See id.*)

Pursuant to Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Fed. R. Civ. P. 37(c)(1). Accordingly, Rule 26(e)(1) provides that:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Fed. R. Civ. P. 26(e)(1).

However, the U.S. Court of Appeals for the Ninth Circuit has "give[n] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Accordingly, the information may be used if the party's failure to comply with Rule 26(a)(2) was either substantially justified or harmless. The Ninth Circuit has set out the following quinquepartite test for determining when sanctions should be imposed: "1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the

---

the second disclosure [was] so substantially different from the first that it falls far outside any reasonable notion of correcting an incomplete or inaccurate expert report" and on the untimeliness of the disclosure of the expert's opinion. Both of these cases represent extreme situations that are not present in the instant action.

[party]; 4) the public policy favoring disposition of cases on their merits; [and] 5) the availability of less drastic sanctions." *Wendt v. Host Intern., Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) (citing *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)).

Defendant claims that "[a]fter [Dr. Johnson's] deposition was taken (and after the deadline for expert disclosures), Johnson provided a supplemental report dated October 5, 2006, because it was noted during his deposition that he had failed to take taxes into account in his original report." (*See* Def.'s Opp'n to Pl.'s Mot. in Limine at 1-2.) Defendant further claims that the "sole purpose of this report was to provide Fuchs Dolan's response to Johnson's reports and deposition testimony[,] and "Fuchs Dolan's basic opinions and calculations regarding Plaintiff's economic loss were not changed in any manner whatsoever." (*See id.*) Defendant further argues that Ms. Dolan's report "was disclosed months before trial, rendering the short delay harmless." (*See id.* at 3.)

Here, Ms. Dolan's supplemental report indicates that the documents reviewed and relied upon were the October 5, 2006, report by Dr. Johnson; the September 20, 2006, deposition of Dr. Johnson, and the September 7, 2006, report of Dr. Robert Hall. (*See* Pl.'s Mot. in Limine, Ex. C.) Throughout her supplemental report, Ms. Dolan refers several times to Dr. Johnson's revised report. (*See generally id.*) Additionally, Ms. Dolan submitted her report within thirty days of the date on which Defendant received Dr. Johnson's supplemental report and deposition transcript. While certain portions of Ms. Dolan's report arguably could have been submitted in her initial report, the majority of the report concerns Dr. Johnson's revised report. Nevertheless, the supplemental report was submitted approximately six months prior to the trial date.

Considering the low risk of prejudice to the Plaintiff and the public policy favoring disposition of cases on the merits, the Court **DENIES** Plaintiff's Motion. Accordingly, finding that the submission of Ms. Dolan's supplement report was harmless to Plaintiff, the Court declines to use its discretion to exclude or limit certain portions of Ms. Dolan's report.

## II.   Defendant's Motions in Limine

Defendant has filed a Motion in Limine to exclude the report and testimony of Plaintiff's vocational rehabilitation expert, Carol Hyland, because Defendant claims that her opinions are not her own, but merely the adoption of the opinions of others. (*See* Def.'s Mot. in Limine at 1.) Defendant further argues that since Plaintiff's economist's, Dr. Robert Johnson, opinions and report are based on Ms. Hyland's report, his testimony and report should also be excluded. (*See id.*) For the reasons discussed below, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motions in Limine.

### A.   *Plaintiff's Vocational Rehabilitation Expert, Carol Hyland*

Defendant argues that Ms. Hyland "merely summarizes the opinions of . . . other people in her report[,]" and the majority of the report is the opinion of Paige Swanke. (*Id.* at 2.) Further, Defendant argues that Ms. Hyland did not rely on facts or data in forming her opinion, but rather adopted the opinions of outsiders in their entirety. (*See id.* at 7.) Defendant argues that Ms. Hyland's report should be excluded since Defendant is unable to cross-examine these outsiders as to the basis of their opinions and Plaintiff is attempting to introduce inadmissible hearsay through Ms. Hyland's report and testimony.

However, Plaintiff argues that Ms. Hyland interviewed Dr. Gray, reviewed his resume and the documentation of his continuing medical education, researched compensation surveys, and consulted with numerous physician recruiters in developing her opinions. (*See* Pl.'s Opp'n to Def.'s Mot. in Limine at 2.) Plaintiff also argues that data collected from contacting physician recruiters "is precisely the type of information that vocation rehabilitation specialists rely upon to form valid opinions." (*Id.* at 3.) Nevertheless, Plaintiff argues that Ms. Hyland "did not, as implied by Defendant's argument, simply contact a recruiter and use the data supplied by that recruiter as the sole basis of her opinion." (*Id.*)

Under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993), the district court serves a "gatekeeping role" with respect to the admissibility of expert testimony. Federal Rules of Evidence 702 and 703 govern the type of information upon which an expert may base her

6

opinion.  Rule 702 provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  Likewise, Rule 703 provides that:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.  Accordingly, Rules 702 and 703 allow an expert to rely on facts or data reasonably relied upon by experts in the field.  Thus, the issues are whether information from recruiters is of the type reasonably relied upon by vocational experts, and to that extent, whether Ms. Hyland improperly relied upon the opinions of others in forming her own opinion.

Defendant cites to *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1012 (C.D. Cal. 2003) for the proposition that "[t]he rules do not permit an expert to rely upon excerpts from opinions developed by another expert for the purposes of litigation."  In *In re Imperial Credit Indus., Inc.*, plaintiffs did not designate a residual valuation expert as required to prove plaintiffs' theory of the case, but instead designated an accountant who was not a residual valuation expert and who simply referenced excerpts from another expert report prepared for a different litigation.  *See id.* at 1012.  In holding that the accountant could not rely upon the opinion of another expert that does not testify, the court reasoned that the accountant "himself was not qualified to perform residual valuation, [and thus] cannot 'validate' [the outside expert's] opinions," and "those opinions cannot be subjected to meaningful adversarial testing through cross-examination of [the accountant]."  *See id.* at 1012, n.5.

In support of the conclusion that the accountant could not rely upon excerpts of another expert's opinion, the court, in *In re Imperial Credit Indus., Inc.*, cited to several decisions from other circuit courts.  *See id.* at 1013 (citing *Tokio Marine & Fire Ins. Co. v. Norfolk & Western*

7

*Ry. Co.*, 1999 WL 12931 at *4 (4th Cir. 1999) ("one expert may not give the opinion of another expert who does not testify"); *American Key Corp. v. Cole National Corp.*, 762 F.2d 1569, 1580 (11th Cir. 1985) ("Expert opinions ordinarily cannot be based upon the opinions of others whether those opinions are in evidence or not"); *6816.5 Acres of Land etc v. United States*, 411 F.2d 834, 839-40 (10th Cir. 1969) (on retrial, "the trial court must take steps to exclude any expert opinion that is predicated upon another opinion"); *Taylor v. B. Heller and Co.*, 364 F.2d 608, 613 (6th Cir. 1966) ("expert opinion may not be based upon the opinion of others, either in evidence or not in evidence").  *In re Imperial Credit Indus., Inc.*, however, is readily distinguishable from the present case.  In *In re Imperial Credit Indus., Inc.*, the court was primarily concerned by the accountant's lack of expertise and thus inability to validate the expert report, whereas in the present case, no arguments have been put forth indicating that Ms. Hyland is not qualified as a vocational expert to evaluate Dr. Gray's work capacity and wage earning potential.

      Plaintiff, however, argues that "[e]xperts may base their opinions on statements by other experts during consultation with the experts."  (*See* Pl.'s Opp'n to Def.'s Mot. in Limine at 4 (citing *Lewis v. Rego Co.*, 757 F.2d 66 (3d Cir. 1985); *Scott v. Ross*, 140 F.3d 1275 (9th Cir. 1998); *United States v. Brown*, 299 F.3d 1252 (11th Cir. 2002).)  In *Scott*, the Ninth Circuit concluded that the expert testimony "conformed to a generally accepted explanatory theory, as indicated by his citations to other authors, primarily collaborators, who have discussed theories consistent with his."  *Scott*, 140 F.3d at 1286.  In response to arguments that the expert failed to base his opinions on evidence reasonably relied on by experts in the field, the court found that the expert's "citation to his extensive studies and to his collaboration with other academics as the basis for his opinions suffice to merit admission of his testimony."  *See id.*  However, this case does not stand for the proposition that experts may simply base their opinions on or testify as to the opinions of other experts. Nevertheless, Plaintiff argues that Ms. Hyland's "opinions are based on much more than Swanke's reports[,]" a data base was assembled "from many sources as a basis for forming her opinions[,]" and the facts and data she relied upon are of the same type she has relied upon in her thirty years as a vocational rehabilitation consultant and in the

hundreds of cases in which she has provided expert testimony. (Pl.'s Opp'n to Def.'s Mot. in Limine at 4.)

Here, Ms. Hyland's report states that "[i]n an attempt to determine Dr. Gray's labor market access upon his exit from the military, [she has] interviewed Dr. Gray, reviewed selected medical records and documentation of his continuing medical education credits[,]" and has "also consulted with executive search firms that would normally help direct an individual, such as Dr. Gray, in his job search." (*See* Def.'s Mot. in Limine, Ex. A at A-1.) Ms. Hyland further states that "[t]o determine Dr. Gray's labor market access, assuming he would have been able to look for employment beginning in 2003, contact was made with several recruiters." (*See id*. at A-4.) Ms. Hyland included the comments of the recruiters, including that of Paige Swanke. In conclusion, Ms. Hyland states that "[o]n the basis of this input, if Dr. Gray had been able to pursue work in accreditation and/or management, it appears that the likely earnings would have been approximately $200,000.00 annually, with some sources quoting up to $250,000.00 annually." (*See id*. at A-7.) In the alternative, Ms. Hyland concludes that Dr. Gray "would have pursued work as a general practice physician or an emergency room physician[,]" and provides respective local and national salaries based on information from the San Diego County Medical Society and from a compendium of physician compensation studies. (*Id.* at A-7, 8.)

The disputed aspect of Ms. Hyland's report is her inclusion of the opinions of several recruiters as to whether or not Dr. Gray would be qualified for the respective positions. (*See id.* at A-4-7.) Also, Ms. Hyland's report includes the reports of five hiring authorities that were contacted by Paige Swanke, but not by Ms. Hyland herself. (*See id*. at A-5-7.) During Ms. Hyland's deposition testimony, the following exchanges ensued:

> Q. Is all of the information that's under Paige Swanke—we have a, b, c, d, e, . . . did all of that information come from Paige Swanke?
> A. Yes, with some materials which you have marked that were provided directly by some of her contacts.
> . . .
> Q. Would it be fair to say, then, except for the materials that are exhibits here and some of which are referred to in your report, that the information came from Paige Swanke?
>
> A. Well, not all of it, but for that section you were just referencing, that would be correct.

(*See id*., Ex. B at B-1.)

9

| | | |
|---|---|---|
| Q. | | . . . . You say here with Dr. Gray's clinical background and history of success in the accreditation process. What did you mean by that last phrase, "history of success in the accreditation process?" |
| A. | | This is her [Ms. Swanke's] distillation of the materials that we provided her in terms of the CV and in terms of the biographical sketch. So it's from looking at that. Those are not my words. Those are hers. |

(*See id*., Ex. B at B-2.)

| | | |
|---|---|---|
| Q. | | By the way, does any of the data in these surveys indicate what a specialty division medical director actually does or an independent plan medical director? |
| A. | | No. I think those are just the titles and the compensation. But it was Patrick Chunn's judgment that these were titles where the salaries would be benchmarked to what he thought his earning capacity was in those areas. |
| Q. | | Can you explain to me why positions that Dr. Gray would not have been qualified for, [sic] why salaries for those positions would be used as benchmarks? |
| A. | | Well, that was Patrick Chunn's determination, that in terms of skill sets and what you were being paid for skill sets. |

. . .

(*See id*., Ex. B at B-3.)

Plaintiff argues, however, that "[i]t is somewhat disinguous that Defendant challenges Hyland's contact with physician recruiters in assembling the data necessary to form her opinions since Defendant's vocational rehabilitation consultant does precisely the same in forming his opinions." (*See* Pl.'s Opp'n to Def.'s Mot. in Limine at 3 (citing Dr. Robert Hall's report, Ex. C at 5-7).) Plaintiff argues that this "type of data is precisely the type of information that vocational rehabilitation specialists rely upon to form valid opinions. In fact, Defendant's vocational expert, Dr. Robert Hall, indicated in his report that "[s]everal private consulting firms (Steven Hirsch & Associates, Brian Gooch & Associates, HCPro the Health Compliance Company) were contacted regarding openings and wage information for JCAHO readiness consultants." (*See id*., Ex. C at 5.)

As indicated above, pursuant to Rule 703, expert opinions based on generally inadmissible data, such as hearsay, are to be admitted only if the data are of a type reasonably relied upon by experts in the field in forming opinions. *See* Fed. R. Evid. 703. For Ms. Hyland's report to be excluded on the ground that it was based on hearsay, it would have to be based on the type of data that vocational experts do not rely upon in determining work capacity and earning potential. At this point, the Court finds it reasonable for a vocational expert to rely on consultations with and information provided by recruiters, as evidenced, in part, by

10

Defendant's vocational expert's own consultation with employers and recruiters in the development of his report.

Given the Court's present understanding of Ms. Hyland's qualifications and experience, it would seem reasonable for Ms. Hyland to have relied upon information collected from recruiters and interpret such information based on her expertise in developing an opinion as to future employability and earning potential. For example, in *United States v. Golden*, the Ninth Circuit held that a special agent's expert testimony was not made inadmissible "because it was based in part on information obtained from other undercover narcotics agents familiar with the markets involved." 532 F.2d 1244, 1247-48 (9th Cir. 1976). The Ninth Circuit, in *Golden*, found such information to be of the type reasonably relied upon by experts in the field. *See id*. at 1248. However, the use of hearsay information, and in particular, double hearsay, will be viewed cautiously by the Court. Nevertheless, at this point, such aspects of Ms. Hyland's report and potential testimony will go to the weight and credibility, not to the admissibility of Ms. Hyland's opinion.

However, the Court notes that Ms. Hyland's conclusion does not indicate that she only relied upon information provided by Ms. Swanke, but rather states that she considered all of the input and also considered information from the San Diego County Medical Society and from a compendium of physician compensation studies. In light of Ms. Hyland's indication that she has interviewed Dr. Gray, reviewed medical records, as well as consulted with search firms, the Court declines to, at this time, take the drastic measure of excluding her report and testimony. At a minimum, the present dispute is one of form over substance, in which both parties rely upon recruiters and employers, but differ as to how the information is presented. Nevertheless, if Defendant so chooses, Ms. Hyland's testimony will be subject to cross examination, during which Defendant may attempt to highlight the alleged deficiencies in Ms. Hyland's methodology. Additionally, if appropriate, the Court will conduct a hearing pursuant to *Daubert* and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), to determine the reliability of Ms. Hyland's testimony.

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Defendant's Motion in Limine to exclude the report and testimony of Plaintiff's vocational rehabilitation expert, Carol Hyland.

### B.  *Plaintiff's Economist Expert, Dr. Robert Johnson*

Defendant argues that if Ms. Hyland's report and testimony are excluded from evidence, then Plaintiff's economist expert, Dr. Robert Johnson, has no basis for his calculations. (*See* Def.'s Mot. in Limine at 7.)  Defendant contends that "the raw material provided to Johnson is unreliable and inadmissible[,]" and thus, "Johnson's calculations are also inadmissible because they are not based on reliable assumptions." (*See id.*)  Since the Court has denied Defendant's Motion in Limine to exclude the report and testimony of Ms. Hyland, the Court **FINDS** no basis upon which to exclude Dr. Johnson's report and testimony.  Accordingly, the Court **DENIES** Defendant's Motion in Limine to exclude Dr. Johnson's report and testimony.

### C.  *Limitation of Plaintiff's Damages Expert Opinions to their Reports and Depositions*

Defendant also argues, in the alternative, that if Plaintiff's damages experts are permitted to testify, their testimony should be limited to their reports and depositions, as required by Federal Rule of Civil Procedure 26(a)(2)(B) and 26(a)(2)(C).  However, the Court **FINDS** it unnecessary to rule on the limitation of the testimony of Plaintiff's damages experts at this time.  Plaintiff has not indicated that either expert intends to testify beyond their disclosure reports provided to Defendant, and thus, such a ruling at this time, would be premature.

**IT IS SO ORDERED.**

DATED: March 12, 2007

HON. NAPOLEON A. JONES, JR.
United States District Judge

cc:  Magistrate Judge Major
     All Counsel of Record